[722 NYS2d 645]

In the Matter of CITIZENS AGAINST RETAIL SPRAWL, by GEORGE CIANCIO, as President, et al., Appellants, v ROBERT GIZA, as Supervisor of Town of Lancaster, et al., Respondents.

Fourth Department, March 21, 2001

### APPEARANCES OF COUNSEL

*David J. Seeger,* Buffalo, for Citizens Against Retail Sprawl, appellant.

*Richard J. Sherwood,* Lancaster, for Robert Giza and others, respondents.

*Hiscock & Barclay, L. L. P.,* Buffalo (*Charles C. Martorana* and *Darrly J. Colosi* of counsel), for Bella Vista Group, Inc. and others, respondents.

*Magavern, Magavern & Grimm,* Buffalo (*Richard A. Grimm, III,* of counsel), for John A. Martzolf and another, respondents.

### OPINION OF THE COURT

PIGOTT, JR., P. J.

On or about March 15, 1999, respondent NEC Transit William, LLC (NEC) submitted an application to respondent Town Board of the Town of Lancaster (Town Board) seeking to rezone approximately 36 acres of property located at the intersection of Transit Road and William Street in the Town of Lancaster (Town) from its previous designations as "commercial and motor services district" (15 acres with frontage on Transit Road) and "residential district one" (21 acres behind the 15-acre parcel with frontage on William Street) to "general business district." NEC sought rezoning in order to construct a 270,000-to-290,000 square-foot commercial strip shopping center with approximately 1,400 parking spaces. Petitioners, members of a citizens' group comprised primarily of homeowners living in the area of the subject property, opposed the rezoning.

The Town determined that the proposed rezoning and development project was a "Type I" action as defined by regula-

tions enacted pursuant to the State Environmental Quality Review Act ([SEQRA] ECL art 8; *see,* 6 NYCRR 617.4 [b] [2], [6] [i], [iii], [iv]). "Type I" actions are, by definition, "more likely to require the preparation of an EIS [Environmental Impact Statement] than Unlisted actions" (6 NYCRR 617.4 [a]).

The Town designated itself the lead agency for SEQRA purposes (*see,* 6 NYCRR 617.2 [u]), thereby assuming responsibility for determining whether an EIS was required in connection with the rezoning. After notifying appropriate State and County agencies of its designation as lead agency and holding a public hearing on the rezoning application, the Town issued a "positive declaration" (6 NYCRR 617.2 [ac]), indicating that implementation of the proposed rezoning "may have a significant adverse impact on the environment."

Because of the positive declaration, the Town required that a draft EIS be prepared (*see,* ECL 8-0109 [4]; 6 NYCRR 617.2 [n]). In November 1999 NEC submitted its draft EIS to the Town, which scheduled a further public hearing to consider it.

Petitioners submitted reports from various experts who had concluded that the draft EIS did not adequately address such issues as drainage, storm water quality, buffering, noise and wetlands. In addition, the United States Army Corps of Engineers, the New York State Department of Transportation, and the adjacent Town of Cheektowaga, challenged the conclusions in the draft EIS concerning wetlands and traffic issues. Indeed, the Town was advised by its own consultant that a supplemental draft EIS would be required.

Nevertheless, on December 20, 1999, the Town Board adopted a resolution issuing a "negative declaration," which is defined as "a written determination by a lead agency that the implementation of the action as proposed will not result in *any* significant adverse environmental impacts" (6 NYCRR 617.2 [y] [emphasis added]). On that same date, the Town Board, by a vote of 3 to 2, adopted a resolution amending its Zoning Ordinance to rezone approximately 33.63 acres of the approximately 36 acres to a general business district based upon its negative declaration, and further providing that "any appropriate mitigation measures proposed by [NEC] or other interested and involved persons should be reviewed and established in connection with the Site Plan Review process." The Town Board, by a vote of 4 to 1, then adopted what it labeled a "conditional rezone" resolution, approving NEC's application, "predicated upon approval by the * * * Town Board, within one [1] year of the date of adoption of this resolution, of

a development site plan * * * for the real property * * *. In the event that such site plan is not so approved, the real property * * * shall revert back to the zoning classifications it enjoyed prior to the adoption of this conditional rezone."

Petitioners then commenced this special proceeding pursuant to CPLR article 78 seeking to annul the Town Board's resolutions of December 20, 1999, approving the rezoning of the subject property and issuing a negative declaration under SEQRA. Petitioners asserted that the Town did not prepare a final EIS and thus respondents failed to comply with the requirements of SEQRA; respondents failed to comply with the requirements of the Town Zoning Ordinance because a development plan was not submitted with the application for rezoning; and the approval of the rezoning application violated Town Law § 263 because it was not in accordance with the Town's comprehensive plan.

Supreme Court granted respondents' motion to dismiss the petition in lieu of serving an answer, concluding, *inter alia,* that a final EIS was not required. That was error.

■ Upon our review of the record, we conclude that the Town Board failed to comply with the procedures mandated by SEQRA and the regulations promulgated thereunder for a project of this magnitude (*see, Bliek v Town of Webster,* 104 Misc 2d 852, 860-865). Having initially determined that NEC'S proposal was a "Type I" action that might have a significant effect on the environment, the Town Board properly required preparation of a draft EIS. After submission of the draft EIS and receipt of significant criticism of it by the public, governmental agencies, and the Town's own consultant, however, the Town Board abused its discretion as lead agency in dispensing with the requirement of a final EIS. We conclude that "application of the criteria for determining environmental significance of 'Type I' actions to the plans for development of the [proposed project] show, beyond peradventure, that this project may clearly have a significant effect upon the environment and that an EIS should have been required" (*Bliek v Town of Webster, supra,* at 862).

"SEQRA's fundamental policy is to inject environmental considerations directly into governmental decision making" (*Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 679). "This policy is effectuated, in part, through strict compliance with the review procedures outlined in the environmental laws and regulations" (*Matter of Merson v McNally,* 90 NY2d 742, 750). The heart of SEQRA is the EIS process (*see,*

*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 415; *Matter of Town of Henrietta v Department of Envtl. Conservation*, 76 AD2d 215, 220). The EIS is the last step in the SEQRA review process. It is a detailed statement setting forth, *inter alia*, the long- and short-term environmental impacts of the proposed action, the alternatives to the proposed action, and mitigation measures proposed to minimize the environmental impact, and must include "copies or a summary of the substantive comments received by the agency" and "the agency response to such comments" (ECL 8-0109 [2]; *see*, 6 NYCRR 617.9 [b] [8]).

We agree with petitioners that, under the circumstances of this case, the Town Board as a matter of law could not dispense with the requirement of a final EIS. Where, as here, the information supplied in the draft EIS establishes that the proposed action meets the SEQRA criteria for determining the significance of "Type I" actions set forth in 6 NYCRR 617.9, the lead agency must continue the SEQRA process and require a final EIS. "Any other conclusion would clearly frustrate the purpose of the SEQRA scheme to require an EIS whenever a proposed action may have a significant effect upon the environment" (*Bliek v Town of Webster, supra*, at 865; *see*, ECL 8-0109 [2]; *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232).

The record establishes that, in issuing a negative declaration and thereby dispensing with the necessity of preparing a final EIS addressing the inadequacies of the draft EIS, the Town Board failed to address critical issues raised by petitioners, the public, governmental agencies, and the Town's own consultant. The record further establishes that the Town Board issued the negative declaration without waiting for the information identified as necessary by the Town's consultant (*see, Matter of Kahn v Pasnik*, 90 NY2d 569, 574).

In addition, the Town Board had received information from a new consultant hired by NEC concerning surface water, wetlands, and traffic control problems as well as information from the Army Corps of Engineers that was not a part of the draft EIS. SEQRA regulations mandate, in pertinent part, that "the lead agency making a determination of significance must * * * set forth its determination of significance in a written form containing a reasoned elaboration and providing reference to any supporting documentation" (6 NYCRR 617.7 [b] [4]). No such supporting documentation was provided in this case. Thus, the related agencies and petitioners were prevented from commenting on or objecting to the new information.

Even if a negative declaration were proper in a case such as this, it may not properly be a "conditioned negative declaration." The regulations provide for a conditioned negative declaration only in "unlisted actions" (*see,* 6 NYCRR 617.2 [h]; *Matter of Merson v McNally, supra,* at 752). It is undisputed that this is a Type I action and not an unlisted action. In *Matter of Merson v McNally* (*supra,* at 752-753), the Court of Appeals set forth a two-step inquiry for determining whether a conditioned negative declaration has been impermissibly issued in the context of a Type I action: (1) "whether the project, as initially proposed, might result in the identification of one or more 'significant adverse environmental effects' "; and (2) whether the proposed mitigating measures incorporated into the Environmental Assessment Form "were 'identified and required by the lead agency' as a condition precedent to the issuance of the negative declaration." The Court further noted that "a lead agency clearly may not issue a negative declaration on the basis of conditions contained in the declaration itself. Nor could the lead agency achieve the same end by other means, such as supporting the negative declaration with a statement that conditions would be imposed only on an underlying special use permit to reduce environmental impacts" (*Matter of Merson v McNally, supra,* at 753).

Here, the negative declaration was accompanied by the proviso that "any appropriate mitigation measures proposed by [NEC] or other interested and involved persons should be reviewed and established in connection with the Site Plan Review process." The resolution to amend the Zoning Ordinance was expressly conditioned upon approval by the Town Board of a development site plan for the real property within one year of the adoption of the resolution. We conclude, therefore, that the Town, as lead agency, improperly issued a negative declaration on the basis of conditions contained in the declaration itself that it hoped to ameliorate by a conditional rezoning of the subject property (*see, Matter of Merson v McNally, supra,* at 753).

■ Having determined that the court erred in granting respondents' motion to dismiss the petition, we must next determine whether respondents should be afforded the opportunity to answer the petition. Pursuant to CPLR 7804 (f), "If the motion [to dismiss the petition] is denied, the court shall permit the respondent to answer, upon such terms as may be just." Petitioners contend that, under the circumstances of this case, we should grant the petition without first permitting respondents to answer. We agree.

Where, as here, "the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result from the failure to require an answer," a court may rule on the merits of the petition without affording respondent an opportunity to serve an answer (*Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs.*, 63 NY2d 100, 102; *cf., Matter of Roth v Syracuse Hous. Auth.*, 270 AD2d 909, *lv denied* 95 NY2d 756). Because the motion to dismiss and petitioners' opposing papers are of such detail and the record sufficiently developed with respect to the issue of whether a final EIS is required in the circumstances of this case, we conclude that no prejudice will result from the failure to permit respondents to answer the petition (*see, Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs., supra,* at 102; *cf., Matter of Roth v Syracuse Hous. Auth., supra,* at 909). Accordingly, the judgment should be reversed, the motion denied, the petition granted in part by annulling the Town Board's resolutions of December 20, 1999, which issued a negative declaration and conditionally rezoned the subject property, and the matter remitted to the Town Board for further proceedings not inconsistent with this opinion.

PINE, HURLBUTT, KEHOE and LAWTON, JJ., concur.

Judgment unanimously reversed, on the law, without costs, motion denied, petition granted in part and matter remitted to respondent Town Board of the Town of Lancaster for further proceedings in accordance with the opinions by PIGOTT, JR., P. J.