In the Matter of WARREN MUNASH et al., Petitioners, v TOWN BOARD OF THE TOWN OF EAST HAMPTON, Respondent. [748 NYS2d 160]

Adjudged that the petition is granted to the extent that the determination is rejected, with one bill of costs, the respondent is directed to issue a positive declaration, and the matter is remitted to the Town Board of the Town of East Hampton to prepare a full Environmental Impact Statement.

In 2000 the Town of East Hampton proposed the acquisition, by negotiated purchase or condemnation, of approximately 32.11 acres of woodland property for the construction of an affordable housing development. The proposed project site is located in the Suffolk County Pine Barrens zone within a special groundwater protection area, which provides recharge to portions of Suffolk County's deep flow acquifer system. This area has also been designated under the Environmental Conservation Law as a critical environmental area.

In accordance with the State Environmental Quality Review Act (hereinafter SEQRA), a consultant retained by the Town completed an environmental assessment form (hereinafter

EAF) on October 31, 2000, and supplemented the EAF on November 16, 2000, and December 11, 2000. The Town Board of the Town of East Hampton (hereinafter the Town Board), then conducted a public hearing on the proposed condemnation on December 14, 2000, and accepted additional written comments and submissions regarding the project through January 5, 2001. Shortly thereafter, on January 18, 2001, the Town Board received a report from a hydrogeologist retained by its consultant to consider the impact of the proposed condemnation and development on groundwater, and the Town Board's consultant completed the final version of its EAF. On the same day it received the final EAF and the hydrogeologist's report, the Town Board issued a resolution declaring that the proposed condemnation and construction of up to 52 single-family houses would have no significant impact on the environment. The petitioners, who include owners and a contract vendee of the property which the Town seeks to condemn, then commenced this proceeding pursuant to EDPL 207 seeking judicial review of the Town Board's compliance with SEQRA, and an order rejecting the negative declaration and directing the preparation of a full environmental impact statement (hereinafter EIS).

"The basic purpose of SEQR[A] is to incorporate the consideration of environmental factors into the existing planning, review and decision making processes of state, regional and local government agencies at the earliest possible time. To accomplish this goal, SEQR[A] requires that all agencies determine whether the actions they directly undertake, fund or approve may have a significant impact on the environment, and, if it is determined that the action may have a significant adverse impact, prepare or request an environmental impact statement" (6 NYCRR 617.1 [c]). The EIS, which is "the heart" of the SEQRA process (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 415) is "a detailed statement setting forth, inter alia, the long- and short-term environmental impacts of the proposed action, the alternatives to the proposed action, and mitigation measures proposed to minimize the environmental impact" (*Matter of Citizens Against Retail Sprawl v Giza,* 280 AD2d 234, 238). Since SEQRA mandates the preparation of an EIS when the proposed action *may* include the potential for at least one significant environmental effect, "there is a relatively low threshold for the preparation of an EIS" (*Matter of UPROSE v Power Auth. of State of N.Y.,* 285 AD2d 603, 608 [internal quotation marks omitted]; *see Matter of Silvercup Studios v Power Auth. of State of N.Y.,* 285 AD2d 598; *Matter of Omni Partners v County of Nassau,* 237 AD2d 440, 442).

Pursuant to SEQRA, a proposed condemnor may issue a negative declaration, obviating the need for an EIS, only after it has identified the relevant areas of environmental concern, taken a "hard look" at them, and made a "reasoned elaboration of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp., supra* at 417 [internal quotation marks omitted]; *see Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363-364; *Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow,* 292 AD2d 617, *lv denied* 98 NY2d 609; *Matter of Hubbard v Town of Sand Lake,* 211 AD2d 1005, 1006). Upon our review of the record, we find that the Town Board has failed to satisfy this standard.

In early January 2001, the Town Board received a report from privately-retained consultants indicating that the proposed development may have a significant impact on the ecosystem of the Pine Barrens area, which encompasses rare, endangered, and threatened animal and plant species. The Town Board also received a report from a hydrogeologist, who expressed concern that the project might have a harmful impact on the quality of groundwater in wells downgradient of the site, and stressed the need for on-site study. Although the hydrogeologist retained on behalf of the Town Board stated in her January 18, 2001, report that it was unlikely that there would be a significant impact on downgradient water quality, she did not perform an on-site study, and indicated that she would further evaluate this issue upon receipt of additional groundwater quality information from the Suffolk County Department of Health Services. However, the Town Board issued its negative declaration on the same day it received its hydrogeologist's report and the final EAF, without waiting for its hydrogeologist to complete her evaluation.

Under these circumstances, it cannot be said that the Town Board took the required hard look at the relevant areas of environmental concern before issuing its negative declaration (*see Matter of Khan v Pasnik,* 90 NY2d 569; *Matter of New York Archaeological Council v Town Bd. of Town of Coxsackie,* 177 AD2d 923). We further note that it appears that the Town Board failed to comply with SEQRA regulations which mandate that an agency responsible for the approval of a type I action forward the EAF to all other involved agencies, so that agreement can be reached as to designation of a lead agency, and a coordinated review undertaken (*see* 6 NYCRR 617.4 [b] [3]; *Matter of Ferrari v Town of Penfield Planning Bd.,* 181 AD2d 149, 151). Accordingly, we reject the Town Board's negative declaration, and remit the matter to the Town Board for the

preparation of a full EIS considering the environmental impact of the proposed condemnation and development. Feuerstein, J.P., Krausman, Friedmann and Schmidt, JJ., concur.