Matter of Price v Common Council of City of Buffalo (2004 NY Slip Op 24071)

Matter of Price v Common Council of City of Buffalo

2004 NY Slip Op 24071 [3 Misc 3d 625]

January 22, 2004

Supreme Court, Erie County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 16, 2004

[*1]
In the Matter of Robert T. Price et al., Petitioners,
v
Common Council of the City of Buffalo et al., Respondents.
Supreme Court, Erie County, January 22, 2004

APPEARANCES OF COUNSEL

Arthur J. Giacalone for petitioners. Michael B. Risman, Corporation Counsel (Lenora B. Foote of counsel), for Common Council of City of Buffalo and another, respondents. Magavern, Magavern & Grimm, L.L.P. (Richard A. Moore of counsel), for Kaleida Health, respondent. Lipman & Biltekoff, LLP (Robert A. Biltekoff of counsel), for Mercy Flight, Inc., respondent.

{**3 Misc 3d at 626} OPINION OF THE COURT

John P. Lane, J.
In March 2003, respondent Kaleida Health, doing business as Women and Children's Hospital of Buffalo, submitted an application for approval of a privately owned helipad or heliport by respondent Common Council and a site plan and design for the helipad for review and approval by respondent Planning Board. The application sought a special permit to operate a helipad at one of four different locations within the hospital complex in the Elmwood Avenue/Bryant Street area, including above the roof of an existing building at 219 Bryant Street owned and operated by Kaleida Health. This is a proceeding and action pursuant to CPLR article 78 and CPLR 3001 seeking a preliminary injunction prohibiting the construction and/or operation of the proposed helipad and a judgment annulling the actions taken by respondents Common Council and Planning Board approving the project. Respondent Kaleida Health cross-moves to dismiss this combined proceeding and action. Petitioners are residents in the neighborhood of the hospital.
Two important issues must be resolved: whether respondent Planning Board was properly designated as the agency to lead the environmental review of the proposed helipad project and whether the Common Council violated the State Environmental Quality Review Act (SEQRA) and the Code of the City of Buffalo by failing to hold a public hearing and by unconditionally approving the construction and operation of the proposed neighborhood helipad.
The establishment and use of a privately owned helipad within the City of Buffalo is governed by chapter 63 of the Code. A privately owned helipad must be authorized by the [*2]Common Council {**3 Misc 3d at 627}(Code § 63-3 [A]). The Common Council is required to forward an application for such a helipad to the New York State Commissioner of Transportation, the Commissioners of Police, Fire and Public Works and the Director of Licenses for review and determination whether the proposed privately owned helipad complies with all applicable codes, ordinances and public safety requirements (Code § 63-3 [C]). Upon receipt of reports from the referral agencies, the Common Council is mandated to hold a public hearing on the proposal "at which all interested parties shall be afforded an opportunity to present evidence and testimony" (Code § 63-3 [D]). The Common Council may approve a privately owned helipad only after consideration of all information presented to it (Code § 63-3 [E]).
After referral of the application to various outside agencies and to the Planning Board, the Common Council's committee on legislation held a public hearing on Kaleida's application on May 20, 2003, following which the committee returned the matter to the Council without any recommendation. On June 10, 2003, the Council took up the matter without holding a public hearing and approved the construction of a helipad over the roof of the building at 219 Bryant Street. Before doing so, the Council did not assess the environmental significance of the proposed project. The Planning Board held a public hearing on July 15, 2003 solely to consider the design and site plan for the proposed helipad. Without making an environmental assessment of the project or determining its potential impact, the Planning Board proceeded to approve the project. Following that action and upon the advice of its attorney, the Planning Board rescinded its approval. Although it had not been designated as the lead agency for the project, the Planning Board directed its staff to prepare a proposed negative declaration, a clear violation of state environmental quality review regulations (6 NYCRR 617.7 [a]). Subsequently, a notice was sent to various involved and interested agencies, including the Common Council, proposing that the Planning Board serve as lead agency to conduct a coordinated review of the helipad project, following which the Planning Board assumed the role of lead agency.
On September 9, 2003, the Planning Board considered the matter again, approved a negative declaration and notice of determination of nonsignificance, and then proceeded to approve the site plan and design review application for the helipad. On the day before the meeting, petitioners' attorney provided the Planning {**3 Misc 3d at 628}Board with information establishing that liquid oxygen in the large storage tanks adjacent to the building at 219 Bryant Street could accelerate combustion and cause fire or explosion (Grunzweig affidavit, exhibit A, at 297).[FN1]

Kaleida provided a supplemental information statement acknowledging concerns about the location of the storage oxygen tanks in which it confirmed a written commitment made in May to the chairman of the Common Council's committee on legislation that the tanks would be relocated to a point at least 100 feet from any residential property within two years of the helipad being operational (id. at 308). The minutes of the meeting (id. at 333) reflect a brief discussion by members of the Planning Board relating to noise levels in the hospital neighborhood and the proximity of the [*3]helipad to the outdoor oxygen storage tanks.[FN2]

The negative declaration (id. at 327-329) states that operation of helicopters in that neighborhood will not exceed local ambient noise levels, and the risks arising from helicopter operations in the vicinity of the aboveground storage tanks are outweighed by the improvement in delivery of emergency medical services for critically ill patients in the western New York area and maintaining the hospital in its current location. Although it would have had authority to do so if it had been a duly designated lead agency (6 NYCRR 617.7 [d]; Code, art XXVIII, § 511-147), the Planning Board did not condition its negative declaration and site plan and design approval upon relocation of the oxygen tanks.
On September 30, 2003, the Common Council rescinded its earlier approval of the helipad and directed publication of a notice of public hearing on the proposed project to be conducted again by the Council's committee on legislation. At the hearing held seven days later, an assistant corporation counsel advised the committee that the Planning Board had filed a negative declaration that the committee was instructed to consider. Petitioners' attorney addressed the committee on increased ambient noise levels caused by helicopter traffic and dangers related to the flight path proposed by Kaleida and fire and explosion that could occur if the oxygen storage tanks in close proximity to petitioner {**3 Misc 3d at 629}Hoffman's property were damaged as a result of a helicopter accident. A Kaleida representative confirmed that it was willing to relocate the offending tanks within two years if the helipad permit were issued. At the conclusion of the hearing, the committee on legislation voted to recommend approval of the project to the Council without establishing any conditions. When the matter came before the full Common Council on October 15th, it again approved the helipad without holding a public hearing and without discussing the environmental issues raised before the committee on legislation or public safety requirements.
It is undisputed that Kaleida's applications for approval of the helipad by the Common Council and site plan and design approval by the Planning Board were subject to the requirements of SEQRA. The proposed helipad is an unlisted action, that is, one that is neither a type I nor type II action, as those terms are defined in 6 NYCRR 617.2. Where an unlisted action requires approval by more than one agency, the involved agencies must decide initially whether to conduct a coordinated or uncoordinated environmental review of the proposed action (6 NYCRR 617.6). Where, as here, the involved agencies choose to conduct a coordinated review, a lead agency must be established prior to a determination of significance (6 NYCRR 617.6 [b] [2]). The determination of significance issued by the lead agency following coordinated review is binding on all other involved agencies (6 NYCRR 617.6 [b] [3] [iii]).
It is well settled that the lead agency for a project must be the agency that is principally responsible for approving the action, in this case the Common Council (6 NYCRR 617.2 [u]). "A lead agency under SEQRA may not delegate its responsibilities to any other agency" (Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd., 253 AD2d 342, 350 [1999], citing Matter of Coca-Cola Bottling Co. v Board of Estimate, 72 NY2d 674, 682-683 [1988]). Kaleida's [*4]application did not involve technical matters in which the Planning Board had particular expertise. Thus, the duty remained with the Common Council, as the agency principally responsible for approving the helipad, to make the final decision on environmental issues and delegation of that responsibility to the Planning Board is a nullity (see Matter of Coca-Cola Bottling Co.). Furthermore, as the city agency with final approval authority, the Common Council had both the power and the duty to impose practicable conditions reasonably related to public safety (6 NYCRR 617.3 [b]; 617.12 [a] [2] [i]).{**3 Misc 3d at 630}
SEQRA does not change the existing jurisdiction of agencies nor jurisdiction among local agencies (6 NYCRR 617.3 [b]). Respondents' contention that the Planning Board had the most direct authority to approve the permit for the helipad is mistaken. Only the Common Council had that power (Code § 63-3 [E]). Planning Board review of site and design plans focuses primarily on new construction, development improvements and off-site impacts (Code, art XXVIII, §§ 511-137, 511-145, 511-146). The limited role of the Planning Board in reviewing the site plan and design for a rooftop helipad to be located above an existing hospital building did not qualify it as the agency with "principal responsibility for carrying out or approving" the helipad (ECL 8-0111 [6]; see River Ctr. v Dormitory Auth. of State of N.Y., 275 AD2d 683, 684 [2000], lv denied 96 NY2d 703 [2001]). To the extent it is claimed that the Common Council and the Planning Board conducted a coordinated environmental review, the failure of the Common Council to act as lead agency and conduct a public hearing to address environmental issues requires that its approval of the helipad be nullified (cf. Matter of Village of Pelham v City of Mount Vernon Indus. Dev. Agency, 302 AD2d 399, 401, lv denied 100 NY2d 505 [2003]). Respondents' reliance on Matter of Schodack Concerned Citizens v Town Bd. of Town of Schodack (148 AD2d 130 [1989], lv denied 75 NY2d 701 [1989]) is misplaced. In that case, the planning board's role included eventual approval of a subdivision and issuance of a special permit for lands proposed to be rezoned, not just site plan review.
The early proceedings before the Common Council and the Planning Board indicate they were unfamiliar with or ignored the requirements of SEQRA. Neither body was authorized to approve the proposed helipad until the provisions of SEQRA had been satisfied (6 NYCRR 617.3 [a]). Strict compliance with SEQRA guarantees that environmental concerns, including public safety, are confronted and resolved prior to approval of a project such as the proposed helipad (see Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337, 350 [2003]; Matter of Citizens Against Retail Sprawl v Giza, 280 AD2d 234, 237 [2001]). The Common Council made no environmental findings when it approved the permit for the helipad at 219 Bryant Street in October. The procedure followed by the city in reviewing the application allowed the Common Council, the governmental entity responsible for the final policy decision to proceed with the helipad project, to be insulated from consideration {**3 Misc 3d at 631}of environmental factors, thus violating a fundamental policy of SEQRA (see Matter of Coca-Cola Bottling Co. at 681-682).
The Common Council, the principal local agency responsible for approval of the helipad, was required to consider and determine the significance of the environmental effect of the proposed helipad, thereby satisfying the fundamental purpose of SEQRA "to inject environmental considerations directly into governmental decision making" (see Matter of [*5]Coca-Cola Bottling Co. at 679; see also Akpan v Koch, 75 NY2d 561, 575 [1990]). As the only city agency authorized to approve the helipad, the Common Council was required to "identify 'the relevant areas of environmental concern' and take 'a hard look' at them" (Matter of Merson v McNally, 90 NY2d 742, 751 [1997], quoting Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 397 [1995]). A lead agency satisfies the hard look standard where it gives studied consideration of a relevant environmental issue (see Mobil Oil Corp. v City of Syracuse Indus. Dev. Agency, 224 AD2d 15 [1996], appeal dismissed 89 NY2d 860 [1996], lv denied 89 NY2d 811 [1997]).
Respondents' argument that the rules of order of Common Council authorized it to delegate the responsibility to hold a public hearing to a subordinate committee before approving the application for the helipad is unfounded. Rules of Buffalo Common Council rule 33 allows referral to a committee only of matters that seek to commit the Council to a certain policy, not the issuance of permits or approvals for helipads or other land uses. The approval of a helipad on a specific piece of property does not constitute a matter of policy. The meaning of Code § 63-3 (D), which requires the Council itself to hold a public hearing before approving a helipad, is clear and unambiguous and must be "construe[d] . . . so as to give effect to the plain meaning of the words used" (Matter of Grossman v Herkimer County Indus. Dev. Agency, 60 AD2d 172, 178 [1977]). By adopting the resolution allowing the committee on legislation to hold the public hearing on Kaleida's application, the Common Council abrogated its duty under the Code of the City of Buffalo and acted in a manner inconsistent with the Council's published rule.
There is no indication in the transcript of its proceedings in October that the Council took a hard look at the public safety issue before unconditionally approving the helipad (see Matter of Kahn v Pasnik, 90 NY2d 569 [1997]). As the potential danger of {**3 Misc 3d at 632}fire and explosion to the neighborhood surrounding the hospital was conceded, it follows from the failure of the Common Council to establish any remedial condition that it had not taken a hard look at the environmental consequences of this project (id.) or given consideration to the information before its committee on legislation as required by Code § 63-3 (E).
It is the role of this court to assure that the city respondents have satisfied the City Code and SEQRA procedurally and substantively (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400 [1986]), not to weigh the desirability of the proposed helipad (see Akpan). The Common Council abrogated its procedural and substantive responsibilities under SEQRA by allowing the Planning Board to assume the pivotal role of lead agency. The history of Kaleida's application establishes that the city respondents failed to comply with the requirements of SEQRA and the City Code. Their subsequent actions were insufficient to effectively cure their earlier errors (cf. Matter of Welsh v Town of Amherst Zoning Bd. of Appeals, 270 AD2d 844 [2000]; Matter of Golden Triangle Assoc. v Town Bd. of Town of Amherst, 185 AD2d 617, 617-618). Those actions of the Common Council and the Planning Board amounted to "rubber stamping" decisions that had been made contrary to the City Code and SEQRA (see Vitiello v City of Yonkers, 255 AD2d 506 [1998]). Having failed to satisfy the requirements of SEQRA and the City Code, the attempts by the Planning Board and the Common Council to cure these violations by rescinding and readopting their prior approvals are ineffective (id.; see also Briody v Village of Lewiston, 188 AD2d 1017 [1992], lv denied 81 NY2d 710 [1993]).
The approval of the helipad project by the Common Council on October 15, 2003, and the site plan approval, negative declaration and determination of nonsignificance by the [*6]Planning Board on September 9, 2003 were arbitrary and capricious, irrational and contrary to law. However, final judgment will not be entered at this time. The public interest and that of the parties to this action and proceeding, as well as judicial economy, will be served best if the matter is remitted to the city respondents for further consideration of Kaleida's application (see Matter of Kahn). The Common Council shall act as lead agency but may, of course, turn to the Planning Board and other agencies for such expert advice and assistance as it deems necessary (see Akpan at 575; Matter of Coca-Cola Bottling Co. at 682-683; ECL 8-0109 [3]). Respondent Kaleida is preliminarily enjoined {**3 Misc 3d at 633}from commencing or continuing construction of the helipad that is the subject of this proceeding and action until further order of the court. Upon completion of proceedings by respondents consistent with this decision and order, the parties may amend and/or supplement their papers, if they intend to proceed here. In that event, petitioners shall serve additional papers within 10 days following action by the Common Council, and respondents shall reply within 10 days thereafter.

Footnotes

Footnote 1: More detailed information concerning risks associated with the storage of liquid oxygen had been supplied previously (Grunzweig affidavit, exhibit A, at 184-194).

Footnote 2: The reviewer who prepared part 2 to the environmental assessment form, having failed to consider the risk of explosion in the event of accident or upset conditions involving the oxygen tanks, concluded that the helipad would not affect public health and safety (id. at 321).