■ In the Matter of VILLAGE OF TARRYTOWN, Respondent, v PLANNING BOARD OF VILLAGE OF SLEEPY HOLLOW et al., Appellants. [741 NYS2d 44] —In a proceeding pursuant to CPLR article 78 to review a determination of the Planning Board of the Village of Sleepy Hollow, dated May 1, 2000, which, inter alia, issued a negative declaration under the State Environmental Quality Review Act (ECL art 8) regarding the subdivision and clustering of an 11.9 acre parcel of land owned by County House Road, LLC, located in the Village of Sleepy Hollow, into an 11-unit housing development, the appeal is from a judgment of the Supreme Court, Westchester County (Barone, J.), entered September 26, 2000, which granted the petition and annulled the determination, and enjoined the approval of the cluster subdivision until an environmental impact statement has been prepared on all of the land of County House Road, LLC, including those properties it owns in the Village of Tarrytown.

Ordered that the judgment is reversed, on the law, with costs, the petition is denied, and the determination is confirmed.

In December 1998, County House Road, LLC (hereinafter CHR) purchased six parcels of land, totaling 60 acres. Five of the parcels are in the Village of Tarrytown (hereinafter collectively referred to as the Tarrytown properties). The Tarrytown properties comprise 48.1 acres. Some of the Tarrytown properties were separated from other Tarrytown properties by public streets, by land owned by the Village of Tarrytown, and by land owned by third parties. The sixth parcel, which comprises 11.9 acres, is in the neighboring Village of Sleepy Hollow. The Sleepy Hollow parcel is located on the southeastern side of the Village of Sleepy Hollow and abuts, to its south, one of the Tarrytown properties. Shortly after CHR purchased this land, the Village of Tarrytown Board of Trustees enacted a building moratorium on all new construction within an area of the Village that included the Tarrytown properties.

After it purchased the property, CHR submitted an application to subdivide the Sleepy Hollow parcel and build 11 single-family homes. Accompanying this application was an environmental assessment form (hereinafter EAF). Appended to the EAF were a traffic study detailing the impact that an 11-unit subdivision would have on local traffic patterns, a storm water

drainage and management report, and an ecological study detailing the various plant and animal life indigenous to the subdivision.

The Planning Board of the Village of Sleepy Hollow (hereinafter the Planning Board) initiated the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) process by declaring itself the lead agency. There were numerous formal communications between CHR and the Planning Board's planning consultant, as well as direct communications among the Planning Board, CHR, and the public at open hearings of the Planning Board. The net result of these communications was that CHR changed the proposed layout of the subdivision in such a way as to minimize its impact on steep slopes, vegetation, and water runoff; the surfaces impervious to water; and the curb cuts onto County House Road. It would also build a water runoff detention basin to improve storm water flow; deposit sufficient money in an interest-bearing escrow account to maintain that detention basin; install sufficient vegetation to screen the subdivision from the view of people on County House Road and the neighboring Rockefeller estate; and leave a total of 2.38 acres of the subdivision as open space, some of which was to be dedicated to the Village of Sleepy Hollow as a park. The final expanded EAF submitted by CHR detailed the steps it would take to mitigate the environmental impacts of its development, including an alleged negligible effect on the one-tenth of an acre of the 11.9 acre subdivision which was located in the Tarrytown Lakes Critical Environmental Area (hereinafter CEA), and detailed how the Village of Sleepy Hollow would be able to provide adequate utilities, such as sewer and water service. This final expanded EAF, at the Planning Board's request, also included a traffic analysis and storm water management report detailing the environmental impacts of the proposed subdivision and a full as-of-right build-out of the Tarrytown properties to their maximum density.

The Planning Board found that development of CHR's subdivision would not have a significant environmental impact and, in that regard, issued both a negative declaration pursuant to SEQRA and preliminary subdivision plat approval. The Village of Tarrytown commenced this proceeding pursuant to CPLR article 78 to challenge that determination, contending, inter alia, that the Planning Board improperly segmented the environmental assessment of the Sleepy Hollow portion of this unified project. In that regard, Tarrytown contended that the Planning Board did not take the required "hard look" at the cumulative impacts of a full as-of-right development of all six parcels owned by CHR.

The Supreme Court granted the petition and annulled the Planning Board's negative declaration pursuant to SEQRA, finding that all six properties were contiguous and the two projects were not segmented. The Supreme Court also enjoined the Planning Board from granting any subdivision approvals until a full environmental impact statement (hereinafter EIS) has been prepared for all 60 acres of CHR's properties.

The law is well settled that judicial review of a SEQRA determination is limited to determining whether the challenged determination was affected by an error of law or was arbitrary and capricious, an abuse of discretion, or was the product of a violation of lawful procedure (*see Akpan v Koch,* 75 NY2d 561; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of City of Rye v Korff,* 249 AD2d 470). In reviewing the lead agency's determination, the court must determine whether the lead agency "identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp., supra* at 417; *see Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359; *Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390). In this regard, "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (*Matter of Jackson v New York State Urban Dev. Corp., supra* at 416; *see Matter of Chemical Specialties Mfrs. Assn. v Jorling,* 85 NY2d 382; *Chinese Staff & Workers Assn. v City of New York, supra*).

"SEQRA mandates the preparation of an EIS when a proposed project 'may have a significant effect on the environment' * * *. Because the operative word triggering the requirement of an EIS is 'may', there is a relatively low threshold for the preparation of an EIS" (*Matter of Omni Partners v County of Nassau,* 237 AD2d 440, 442, citing *Matter of Chemical Specialties Mfrs. Assn. v Jorling, supra*). Furthermore, "SEQRA regulations provide that a Type I action * * * 'carries with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS'" (*Matter of Omni Partners v County of Nassau, supra* at 442, citing 6 NYCRR 617.4 [a] [1]). However, where a developer works with the lead agency and other reviewing agencies in public and, as a result of that open consultation, incorporates changes in the project which mitigate the potential environmental impacts, a negative declaration may be appropriate—provided that such declaration is not the product of closed-door

negotiations or of the developer's compliance with conditions unilaterally imposed by the lead agency (*see Matter of Merson v McNally*, 90 NY2d 742, 755-756; *Matter of Waste Mgt. of N.Y. v Doherty*, 267 AD2d 464).

In this case, the Planning Board received input on CHR's project from members of the public, interested and involved agencies, and the Village of Tarrytown. CHR modified the scope of its project in response to both this input and input from the Planning Board. The Planning Board took the appropriate hard look at the areas of concern, which included the impact on the .1 acre which was located within the CEA, the impact on open spaces and community character, the impact on local traffic patterns, and the impact on water runoff (*see generally Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y.*, 259 AD2d 26; *Matter of Byer v Town of Poestenkill*, 232 AD2d 851; *see also Matter of Concerned Citizens of Val. Stream v Bond*, 282 AD2d 532). Additionally, regarding Tarrytown's assertion that the traffic analysis was inadequate based on its failure to include two specified intersections within the Village of Tarrytown (when that analysis specifically addressed other intersections within Tarrytown), the Village of Tarrytown did not raise this issue before the Planning Board and, therefore, it is improper to make this contention on appeal (*see Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven*, 204 AD2d 548; *Matter of Schodack Concerned Citizens v Town Bd. of Town of Schodack*, 148 AD2d 130, 135).

Turning to the issues of segmentation and cumulative assessment, it is clear that at the time CHR proposed to develop its Sleepy Hollow parcel, its Tarrytown properties were affected by a Tarrytown building moratorium. This building moratorium was ostensibly for the purpose of reconsidering the zoning applicable to the Tarrytown properties. In light of the building moratorium and the uncertain zoning, it is clear that any plans to develop those properties were speculative and hypothetical. In that regard, it cannot be said that the development of the Sleepy Hollow parcel was the first phase of a larger, unified project (*see Matter of Buerger v Town of Grafton*, 235 AD2d 984 [no segmentation found where developer sought to develop an area of a large parcel and there was no indication that the proposed subdivision was the first phase of a larger project]; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven, supra* [project was not improperly segmented when there was uncertainty as to when, if ever, one of the three lots would be developed]; *Matter of Residents for a*

*More Beautiful Port Washington v Town of North Hempstead,* 149 AD2d 266 [project was not improperly segmented when other proposals for additional use of the land were tentative and did not necessitate more than a generalized discussion of possible environmental impacts]; *cf. Matter of Village of Westbury v Department of Transp. of State of N.Y.,* 75 NY2d 62 [a parkway interchange project and a parkway widening project in the same area were complementary components of the same project to remedy traffic problems on the parkway]; *Matter of Citizens Concerned for Harlem Val. Envt. v Town Bd. of Town of Amenia,* 264 AD2d 394 [assessment was improperly segmented because the rezoning was an integral part of an overall proposal to allow mining]; *Matter of Teich v Buchheit,* 221 AD2d 452 [environmental assessment improperly segmented because it was clear that the parking lot project was an integral part of the hospital's future expansion plan]).

Moreover, because the Sleepy Hollow development was not part of an overall plan of development and was independent of any hypothetical plans to develop the Tarrytown properties, the Planning Board was not required to engage in an assessment of the cumulative environmental impacts that one project would have on the other (*see Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 80 NY2d 500; *Matter of North Fork Envtl. Council v Janoski,* 196 AD2d 590; *but see Matter of Village of Westbury v Department of Transp. of State of N.Y., supra*; *Matter of Teich v Buchheit, supra*). However, to the extent that the Planning Board did consider those potential cumulative impacts, it took an appropriately hard look at those impacts before issuing its negative declaration (*see generally Committee to Preserve Brighton Beach & Manhattan Beach v Planning Comm. of City of N.Y., supra*; *Matter of Byer v Town of Poestenkill, supra*).

In light of our determination, we need not reach the parties' remaining contentions. Santucci, J.P., O'Brien, H. Miller and Cozier, JJ., concur.