■ In the Matter of AC I SHORE ROAD, LLC, Respondent, v INCORPORATED VILLAGE OF GREAT NECK et al., Appellants, et al., Respondents. [841 NYS2d 344]—

In a proceeding pursuant to CPLR article 78 to annul Local Law No. 8 (2004) of the Incorporated Village of Great Neck, amending former chapter 210 of the Code of the Incorporated Village of Great Neck to create a waterfront district, the appeal is from a judgment of the Supreme Court, Nassau County (Bucaria, J.), entered March 17, 2006, which, upon a decision of the same court dated January 9, 2006, granted the petition, and annulled Local Law No. 8 (2004) of the Incorporated Village of Great Neck.

Ordered that the judgment is affirmed, with costs.

In 2001 the Board of Trustees of the Incorporated Village of Great Neck (hereinafter the Board) began to consider a plan for the redevelopment of its waterfront along Manhasset Bay. The plan included amending the Village's zoning regulations to create: (1) a residential "Waterfront Development" district along the east side of East Shore Road, directly abutting Manhasset Bay, in an area that had previously been zoned "Industrial;" and (2) a "Mixed-Use" district along the west side of East Shore Road in an area that had previously been zoned "Business C." At the time, various industrial, commercial, and municipal properties were located in the area sought to be rezoned, including two sewage treatment facilities, one on each side of East Shore Road. At the same time that it was considering rezoning, the Board was also considering a plan to decommission the sewage treatment plants and divert its sewage, by pipe, from the north shore of Long Island, where the Village is located, to the Cedar Creek treatment facility located some 16 miles away in Wantagh, on the south shore of Long Island.

In 2003, pursuant to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), the Board released for public comment a draft generic environmental impact statement (hereinafter the DGEIS) for the proposed rezoning. In its description of the "Proposed Action," the DGEIS stated that the action was "intended to lead to the development or redevelopment of the rezoned properties as shown" on a "conceptual site plan." The "conceptual site plan" depicted the two existing sewage treatment plants as being replaced by residential and retail development. The conceptual site plan also showed a 1.1-acre waterfront park and promenade, which was

described in the DGEIS as "another component of the proposed action." The DGEIS stated that it was the intention of the Village to issue a request for proposal to prospective developers who would submit a master plan for the development of the entire property in accordance with the proposed zoning.

The "Background" section of the DGEIS stated that the Board had "identified many opportunities to redevelop the area, converting undesirable or vacant properties into a viable, vibrant residential waterfront development," and described the plan to decommission the sewage treatment plants and divert the Village's sewage to the Cedar Creek facility in Wantagh as "an initiative currently being explored." The DGEIS identified the "relocation of some existing Village sewage treatment facilities to more appropriate locations" as a significant beneficial impact of the proposed action.

In June 2003 the Board issued a final generic environmental impact statement (hereinafter the FGEIS), which included responses to comments made during the public hearing period. In response to public comments that unpleasant odors in the proposed rezoned area would make residential development infeasible, the FGEIS stated: "It is anticipated that the sewer diversion project will help to reduce unpleasant smells in the area."

Despite the apparent interrelatedness of the redevelopment plan and the sewage diversion plan, neither the DGEIS nor the FGEIS contained any analysis of potential environmental impacts of the sewage diversion plan, other than the conclusion that the relocation of some existing Village sewage treatment facilities to more appropriate locations would be a significant beneficial impact of the proposed action. In response to numerous public comments to the effect that the Village should consider the environmental impacts of the sewage diversion plan before considering rezoning, the FGEIS stated: "The proposed diversion to the Cedar Creek treatment station is a project wholly independent of the proposed East Shore Rezoning and will continue to be pursued regardless of the ultimate rezoning of the East Shore Road area. As the proposed action and the subject of the DGEIS is the proposed rezoning of East Shore Road, only comments pertaining directly thereto require a response."

After adopting a SEQRA findings statement, the Board enacted two local laws amending its zoning regulations, one creating a "Waterfront District" and one creating a "Mixed-Use" District. The petitioner, the owner of property located within the new "Waterfront District," commenced this CPLR

article 78 proceeding to annul the local law creating the "Waterfront District."

Under the circumstances of this case, we agree with the Supreme Court that the Board improperly segmented its review under SEQRA, and that the potential environmental impacts of the related sewage diversion plan should have been considered at the time of the rezoning (see 6 NYCRR 617.3 [g] [1]; Matter of Village of Westbury v Department of Transp. of State of N.Y., 75 NY2d 62 [1989]; Matter of Long Is. Pine Barrens Socy. v Town Bd. of Town of Riverhead, 290 AD2d 448; Matter of Teich v Buchheit, 221 AD2d 452 [1995]). The record belies the appellants' contention that the sewage diversion plan was speculative, hypothetical, and not part of a larger unified plan (cf. Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow, 292 AD2d 617 [2002]).

In addition to the sewage issue, we agree with the Supreme Court that the DGEIS, the FGEIS, and the SEQRA findings statement were insufficient in that they failed to take the requisite "hard look" at two other areas of environmental concern (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]). First, while the DGEIS noted that the soil in the area to be rezoned is potentially contaminated, and referred to an environmental report describing contamination on the petitioner's property, the DGEIS and the SEQRA findings statement simply concluded that the petitioner's property will be remediated in accordance with applicable standards and requirements, without examining whether the area can be remediated to residential standards. Second, while the DGEIS stated that a "1.1 acre waterfront park and promenade providing access to Manhasset Bay is another component of the proposed action" and that these projects "will require dredging of the lower portion of Manhasset Bay," neither the DGEIS, the FGEIS, nor the SEQRA findings statement contained any analysis of the dredging project or its impacts.

Accordingly, the Supreme Court properly granted the petition.

The parties' remaining contentions either are without merit or need not be reached in light of our determination. Spolzino, J.P., Santucci, Florio and Angiolillo, JJ., concur.