OPINION OF THE COURT
William B. Rebolini, J.
Petitioners commenced this CPLR article 78 proceeding to annul the Town Board’s adoption of the Town of East Hampton Comprehensive Plan dated May 6, 2005 and Local Law No. 16 (2005) of the Town of East Hampton which amended article XII of chapter 255 (Zoning) of the Code of the Town of East Hampton. Petitioners contend the comprehensive plan and the local law were adopted in violation of the State Environmental Quality Review Act (SEQRA). Specifically, petitioners allege that the Town’s environmental impact statement (EIS) failed to consider the “no action alternative” to the adoption of the comprehensive plan, and that the Town impermissibly “segmented” consideration of the issues by failing to consider the environmental effects of constructing the proposed condominium units and sewage treatment plant. The petition is granted.
Petitioners are the owners of several parcels of property totaling approximately 49 acres on Star Island located in Lake Montauk in the Town of East Hampton. Star Island is bisected by Star Island Road which runs north to south. Petitioner MYC New York Marina, L.L.C. owns lot 8, lot 16 and adjacent underwater lot 15. Petitioner MYC New York Resort, L.L.C. owns lot 7 and adjacent underwater lot 20, lot 9 and adjacent underwater lot 10, lot 17 and adjacent lot 18. All of the lots on the east side of Star Island Road (lots 9, 10, 15, 16, 17 and 18) are improved with a hotel and marina complex known as the Montauk Yacht Club. The lots on the west side of Star Island (lots 7, 8 and underwater lot 20) are currently vacant.
*753 An article 78 proceeding was previously commenced seeking a review and reversal of a November 2, 1988 resolution of the Planning Board of the Town of East Hampton. The 1988 resolution denied the application submitted by the previous owners of the subject lots, East Waters Edge Co., for a special permit to construct a condominium resort and sewage treatment plant (see Matter of East Waters Edge Co. [Town of E. Hampton], NYLJ, Aug. 21, 1989, at 27, col 4 [Sup Ct, Suffolk County, Lama, J.]). At that time, the area was zoned Resort District (RS) for resort use; thus, there was no dispute that the proposed construction was within the minimal requirements of the Town’s zoning ordinance (id.). The threshold question before Justice Lama was, therefore, “whether or not, based upon environmental considerations, the Town Planning Board had the power to deny [a special use permit application] to build when the proposed construction met the zoning requirements” (id.). Justice Lama answered the threshold question in the affirmative, but stated that there must be a rational basis for the denial. Justice Lama concluded that the actions of the Board were not rational, but arbitrary and capricious. Accordingly, Justice Lama held that the application must be granted, but that the Planning Board could place reasonable conditions upon the issuance of the permit. The parties were directed to settle order and judgment.
On August 30, 1999, East Waters Edge, petitioners’ predecessors in title, entered into a stipulation of settlement with the Town Board and Planning Board to settle the previous article 78 proceeding. Pursuant to the stipulation, the Town Board and Planning Board authorized the construction of 50 residential condominium units, and required East Waters Edge to construct a sewage treatment plant which would be available to all property owners and boating facilities on Star Island. Under the terms of the stipulation, 42 units were to be constructed on lot 16, and eight units and the underground portion of the leaching field for the sewage treatment plant were to be constructed on lot 7. East Waters Edge also agreed to amend the pending application before the Zoning Board of Appeals (the ZBA) which sought a natural resources permit to include the agreed-upon terms and conditions set forth in the stipulation. Thereafter, petitioners herein acquired the subject lots, and in October 2002, applied to the ZBA for the permit to construct the 50 condominium units and the sewage treatment plant.
In the meantime, to update its comprehensive zoning plans as required by Town Law § 272-a, the Town of East Hampton was *754 conducting a study of its development and projected future growth. The studies concluded that since the adoption of its last comprehensive plan in 1984, East Hampton was the fastest growing town in Suffolk County and trends projected that the high growth rate would continue. Thus, to further the Town’s goals to protect the environment, preserve its community character, control population density and protect open space, rezoning was recommended by the Town Board.
In September 2004, after 4V2 years of studying and planning, the Town Board announced that it would promulgate a new comprehensive plan for the Town of East Hampton, and identified itself as the “lead agency” for SEQRA review purposes. On September 28, 2004, the Town Board adopted a draft Town of East Hampton comprehensive plan and a draft generic environmental impact statement (DGEIS) in which rezoning of 2,500 parcels was proposed, including a recommendation to rezone petitioners’ vacant parcels on the west side of Star Island Drive from RS to A5 residential district.
The Town Board held a public hearing on the draft comprehensive plan and the DGEIS on November 4, 2004, and accepted additional written comments on the proposal until November 15, 2004 and on the DGEIS until January 21, 2005. Petitioners’ counsel submitted a written objection and appeared at the public hearing to place the Town Board on notice of the pending application before the ZBA and to extol the ecological and environmental benefits to Star Island, Lake Montauk and the Town of East Hampton of constructing the sewage treatment plant.
In response to the comments received, the final generic environmental impact statement (FGEIS) was prepared and accepted on April 14, 2005 by Resolution No. 536 of 2005. On May 6, 2005, the Town Board adopted the findings statement required of SEQRA, adopted a final comprehensive plan, and by Resolution No. 650 adopted Local Law 16 which rezoned all the parcels recommended in the final comprehensive plan, including rezoning petitioners’ vacant parcels from RS to A5. Petitioners commenced this proceeding on June 27, 2005 to challenge the adoption of Local Law 16. The gravamen of the petitioners’ claims is that the rezoning of its vacant parcels from RS to A5 effectively forecloses their development plans, including the construction of the sewage treatment plant, previously approved by the Town Board and Planning Board under the stipulation. Petitioners argue that under the RS classification, the proposed *755 development of the condo units was allowed as special permit uses, whereas the A5 classification allows for construction of only one residential unit per five acres of land.
Moreover, petitioners argue, neither the draft comprehensive plan, the DGEIS nor the FGEIS included a specific analysis of the environmental impact for rezoning the vacant lots they owned, and did not address whether the proposed rezoning would result in a beneficial or adverse impact to the environment. Additionally, petitioners argue that although the EISs discussed the ecological importance of Star Island and the need for careful environmental review, the FGEIS did not acknowledge the stipulation or the extensive SEQRA process which preceded the stipulation. It is argued that rather than addressing petitioners’ claim that the proposed sewage treatment plant would result in a substantial improvement to the ecology of Lake Montauk, the Town summarily dismissed this claim and referred to a report for Montauk Harbor, dated July 2003. Petitioners point out that the FGEIS refers to a 2002 draft Montauk dock area plan commissioned by the Town Board in 2002 which recommended development and implementation of a wastewater treatment system. Additionally, the petitioners point out that the draft Montauk plan recommended the hiring of a consultant to begin working on the study of wastewater issues, including the construction of a wastewater treatment facility. The petitioners allege upon information and belief that the draft Montauk plan culminated in the report for Montauk Harbor which was never formally approved or adopted.
It is further argued that the Town Board’s lack of any analysis of the benefits or detriments of petitioners’ current development plan with the sewage treatment plant versus the development plan that would be allowed under the rezoning without a sewage treatment plant, violates the SEQRA requirements which mandate that an EIS set forth an analysis of “alternatives to the proposed action.” Moreover, petitioners maintain, the FGEIS did not simultaneously analyze whether there is a site available for the construction of the sewage treatment plant, or the practicality and cost to the Town of constructing the plant. Failing to simultaneously analyze these issues of constructing a wastewater facility which the Town admits is needed, petitioners’ posit, amounts to segmentation which is prohibited under SEQRA unless the lead agency expressly states in its EIS the supporting reasons for segmented review and demonstrates “that such review is clearly no less protective of the environment” (6 NYCRR 617.3 [g] [1]).
*756 Respondents acknowledge that the adoption of the comprehensive plan and the local law constitute a “Type I” action under SEQRA, mandating a “hard look” at environmental concerns. In supporting their position, respondents point to the time expended, the number of agencies involved and the extensive record as an indication that the Town Board took a “hard look” at environmental concerns relating to the need for a wastewater facility. Respondents argue that the comprehensive plan was developed with the assistance of 17 citizen subcommittees, comprehensive recommendations of Suffolk County’s former chief planner, Lee Koppelman, the preparation of the DGEIS and extensive public and agency input. However, an extensive record, in and of itself, does not satisfy the requirements of SE-QRA.
Petitioners and respondents, by leave of this court, have submitted supplemental papers to address the impact of the decision rendered in Ross School v Town of E. Hampton (Sup Ct, Suffolk County, Aug. 18, 2006, Whelan, J., index No. 14395/05), an article 78 proceeding involving the same SEQRA process, adoption of the comprehensive plan and the rezonings implemented by Local Law 16. Justice Whelan denied the petition, dismissed the proceeding and upheld the actions of the Town insofar as challenged therein.
Petitioners herein point out that, in the Ross School case, the actions challenged were the Town’s adoption of a “Coverage Law” and the Town’s rezoning of properties used as part of the Ross School campus, located in Wainscott, about 20 miles west of Star Island. Petitioners maintain that the challenges made herein regarding the proposed construction of the condominium units and the sewage treatment plant are site-specific to Star Island in Lake Montauk and, therefore, were not raised by the petitioners in the Ross School case, and thus, not before Justice Whelan. Hence, petitioners argue, the Ross School decision has no relevance to the case at bar.
Respondents, on the other hand, posit that the claims of petitioners herein are subsumed in Justice Whelan’s holding in Ross School. Respondents maintain that Ross School was one of six article 78 proceedings simultaneously brought by the same law firm setting forth the same challenges to the Town’s compliance with SEQRA. Therefore, respondents argue, there is no discernible reason for the instant proceeding (which respondents characterize as “nearly identical” to the Ross School proceeding) to have a different result.
*757 This court finds that the well-reasoned decision of Justice Whelan in the Ross School case is irrelevant to the determination herein. The 2,500 parcels of land recommended for rezoning in the comprehensive plan are categorized into hamlets. A separate account is given for the recommended rezoning of each hamlet. The parcels of land upon which the private coeducational Ross School is situated, rezoned from a commercial-industry district to residential district, is in the hamlet of Wainscott described as the smallest planning area in terms of area and population in East Hampton. According to the comprehensive plan, Star Island is Montauk, the hamlet with the largest number of seasonal housing units and hotel/motel rooms of any single community on Long Island, with a significant population of fish and wildlife and the largest commercial fishing port in New York State, both in terms of the value of fish and number of fishing vessels. Therefore, it is evident that the rationale behind the rezoning of such dissimilar hamlets with obviously different site-specific concerns, warrants distinct findings as to the effect of Local Law 16 on the petitioners’ property. Hence, the court will address the petitioners’ arguments to annul Local Law 16 inasmuch as it pertains to their parcels on Star Island in the hamlet of Montauk.
As a threshold issue, respondents raise an objection regarding the standing of petitioners to bring this proceeding. A property owner whose land is subject to a zoning change “has a legally cognizable interest” in assuring that the government has satisfied SEQRA before any rezoning occurs (Matter of Har Enters, v Town of Brookhaven, 74 NY2d 524, 529 [1989]). Ownership of property adjacent or very close to affected property generally gives rise to a presumption of standing because it is reasonable to assume that an owner located in the immediate vicinity of a rezoned area will suffer an injury different from the community at large and thus be brought into the zone of interest (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406 [1987]). Therefore, by virtue of their status as property owners, and by reason of their location, the petitioners’ interests are clearly “in some way different from [those] of the public at large.’’(Society of Plastics Indus, v County of Suffolk, 77 NY2d 761, 774 [1991].) Moreover, as discussed below, the environmental injuries concerning the effluent from the Montauk Yacht Club into Lake Montauk gives petitioners standing to challenge the rezoning changes (see Matter of Gernatt Asphalt Prods, v Town of Sardinia, 87 NY2d 668 [1996]).
*758 In the fifth objection in point of law, respondents assert the statute of limitations bar. This objection, however, only refers to any claims asserted against the ZBA and the Planning Board of the Town of East Hampton. As petitioners explain in their papers that they are not challenging any actions taken by the ZBA or the Planning Board, but have named these entities as respondents only in the event they claimed to be interested parties, the statute of limitations is not a bar. The remaining objections in point of law asserted in the respondents’ answer are without merit.
“Judicial review of a lead agency’s SEQRA determination is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination ‘was affected by an error of law or was arbitrary and capricious or an abuse of discretion’ (CPLR 7803 [3])” (Akpan v Koch, 75 NY2d 561, 570 [1990] [citations omitted]). The decisions an agency makes pursuant to SEQRA may not be second-guessed by the courts, and “can be annulled only if arbitrary, capricious or unsupported by substantial evidence” (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]; Aldrich v Pattison, 107 AD2d 258, 267 [1985]). “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Substantial evidence has been defined as “being such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact or the kind of evidence on which responsible persons are accustomed to rely in serious affairs” (Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd, 79 NY2d 373, 383 [1992] [citations and internal quotation marks omitted]). The Court of Appeals in WEOK Broadcasting further enunciated that “[although a particular kind or quantum of ‘expert’ evidence is not necessary in every case to support an agency’s SEQRA determination, . . . SEQRA[ ] mandate [s] that a balance be struck between social and economic goals and concerns about the environment” (id. at 384-385, citing Matter of Jackson v New York State Urban Dev. Corp., supra).
In assessing an agency’s compliance with the substantive mandates of SEQRA, the courts review the final EIS to determine whether the agency identified the relevant areas of environmental concern, took a “hard look” at them, and made *759 a “reasoned elaboration” of the basis for its determination (Akpan v Koch, 75 NY2d at 570; Aldrich v Pattison, 107 AD2d at 265). To satisfy the “hard look” test, the discussion of alternatives must be “at a level of detail sufficient to permit a comparative assessment of the alternatives discussed” (Aldrich v Pattison, 107 AD2d at 275).
Here, it is clear that the Town Board recognized the need for a sewage treatment facility. Indeed, in the FGEIS the Town Board refers to the draft Montauk dock area plan commissioned by the Town Board in 2002 which recommended the development and implementation of a wastewater treatment system for the entire area, including Star Island. Moreover, in the previous article 78 proceeding, the Town Board was concerned about the high coliform counts in parts of Lake Montauk and admitted that the problem causing the condition was effluent from the Montauk Yacht Club. Based on the uncontroverted expert evidence in the record before Justice Lama, the proposed sewage treatment plant would handle effluent from the Montauk Yacht Club and other existing facilities as well as the new construction thereby eliminating part of the condition in Lake Montauk. Nevertheless, Justice Lama wrote “the Planning Department attempted to get [the petitioners] to scale down the project although its requests were never based upon evidence to show the environmental undesirability of the project as proposed.” (Matter of East Waters Edge Co. [Town of E. Hampton], NYLJ, Aug. 21, 1989, at 27, col 4.) Justice Lama stated that “[n]othing in the record supports any conclusion other than that the Board was appeasing the city opposition . . . and further was attempting to impose its own standards based on supposition and not evidence.” (Id.)
Similarly, in the proceeding at bar, respondents have not provided any quantitative or qualitative analysis or evidence on the environmental impacts of rezoning petitioners’ property to preclude the construction of the proposed sewage treatment plant. Rather, the respondents point out that in the FGEIS, it is noted that the New York State Office of Parks, Recreation and Historic Preservation deems petitioners’ property eligible for listing on the National Register of Historic Places, and that the rezoning “will help density of development allowed on this site and may allow for the intact preservation and avoidance of these sensitive features.” However, the record before the court does not contain any factual evidence, expert or otherwise, to support this statement or counter the extensive factual evidence submitted by petitioners.
*760 Thus, the court finds that the respondents did not consider a “no action” alternative and, consequently, failed to take a “hard look” at the environmental impact of rezoning the petitioners’ property to preclude the construction of a sewage treatment facility (see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 32 AD3d 431 [2006], lv granted 8 NY3d 808 [2007]; Matter of Long Is. Pine Barrens Socy. v Town Bd. of Town of Riverhead, 290 AD2d 448 [2002], lv denied 98 NY2d 615 [2002]; cf. Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd., 39 AD3d 1098 [2007]; Matter of C/S 12th Ave. LLC v City of New York, 32 AD3d 1 [2006]). The court also finds that the respondents engaged in improper segmentation of its environmental review of the rezoning.
Segmentation is “the division of the environmental review of an action such that various activities or stages are addressed ... as though they were independent, unrelated activities, needing individual determinations of significance” (6 NYCRR 617.2 [ag]). The Court of Appeals has held that
“when an action with potential adverse effects on the environment is part of an integrated project designed to balance conflicting environmental goals within a subsection of a municipality that is ecologically unique, the potential cumulative impact of other proposed or pending projects must be considered pursuant to SEQRA before the action may be approved” (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 200 [1987]).
Here, petitioners contend that the respondents improperly segmented their environmental review of the proposed rezoning by failing to consider the environmental impact of its proposed plan to build a sewage treatment plant. Respondents counter with the argument that “[t]he Town did not segment its environmental review because investigation of the potential environmental impacts of the proposed sewage treatment plant would only be conducted in a separate EIS at a point in time when the STP is likely to occur in the reasonably foreseeable future.” The respondents argue that the petitioners’ construction of the sewage treatment plant is subject to discretionary approval. Additionally, respondents argue, the sewage treatment plant is an entirely separate project from, and not a necessary part of, the Town’s comprehensive plan or rezonings.
Pursuant to 6 NYCRR 617.3 (g) (1),
*761 “If a lead agency believes that circumstances warrant a segmented review, it must clearly state in its determination of significance, and any subsequent EIS, the supporting reasons and must demonstrate that such review is clearly no less protective of the environment. Related actions should be identified and discussed to the fullest extent possible.”
In this case, the Town Board, as the lead agency, did not properly consider the pending application for the proposed sewage treatment plant, nor did it give an explanation as to why segmentation was permissible and no less protective of the environment (see Matter of Teich v Buchheit, 221 AD2d 452 [1995]). While it has been held that segmentation does not exist where future actions are speculative (see Matter of Village of Tarry town v Planning Bd. of Vil. of Sleepy Hollow, 292 AD2d 617, 620 [2002], lv denied 98 NY2d 609 [2002]), petitioners have sufficiently established that the long range plan for the Town of East Hampton includes a wastewater treatment facility (see Matter of AC I Shore Rd., LLC v Incorporated Vil. of Great Neck, 43 AD3d 439 [2007]). Indeed, in the findings statement, one of the enumerated goals of the comprehensive plan is to “[d]evelop road, wastewater treatment, water, and power infrastructure . . . needed to reduce public health, safety, and environmental risks.” Therefore, clearly the construction of the sewage treatment plant, the cost of which would be borne by petitioners and not the town taxpayers, should have been considered in a cumulative review process prior to the adoption of the local law (see Matter of AC I Shore Rd., LLC v Incorporated Vil. of Great Neck, supra).
Accordingly, the instant proceeding by petitioners seeking a judgment annulling Local Law 16 on the ground that it was adopted by the respondents in violation of SEQRA, to the extent that it applies to the subject parcels, is granted and the comprehensive plan and that part of the local law which is challenged herein is declared null and void. The prior existing comprehensive plan and prior applicable zoning law pertaining to the petitioners’ subject parcels remain in effect.