In the Matter of VILLAGE OF CHESTNUT RIDGE et al., Respondents-Appellants, v TOWN OF RAMAPO et al., Appellants-Respondents, et al., Respondents/Defendants. [953 NYS2d 75]—

This case involves a challenge to an enactment by the Town of Ramapo of zoning provisions known as the Adult Student Housing Law (hereinafter the ASHL), permitting the erection and maintenance of multi-family housing for adult married students, pursuant to special permit, in residential zones located in unincorporated areas of the Town. First enacted in June 2004 as Local Law No. 9 (2004) of the Town of Ramapo (hereinafter LL No. 9), the ASHL affected four parcels of real property, including an area known as the Nike Site. In November 2004, LL No. 9, along with the Town's entire zoning law, was repealed, and replaced with a new zoning law—Local Law No. 10 (2004) of the Town of Ramapo (hereinafter LL No. 10)—which incorporated the provisions of LL No. 9. The petitioners/plaintiffs (hereinafter the petitioners) also challenged the Town's enactment of LL No. 10 and the granting of permission to construct 60 units of adult student housing on the Nike Site based, inter alia, on alleged violations of the State Environmental Quality Review Act (ECL article 8; hereinafter SEQRA). The petitioners' contentions focus primarily upon the facts that LL No. 9 was adopted by the Town Board of the Town of Ramapo (hereinafter the Town Board) after the issuance of a negative declaration under SEQRA adopted June 15, 2004, and that the site plan for the Nike Site was approved by the Planning Board of the Town of Ramapo (hereinafter the Town Planning Board) after the issuance of a negative declaration adopted November 30, 2004. A negative declaration is "a written determination by a lead agency that the implementation of the action as proposed will not result in any significant adverse environmental impacts" (6 NYCRR 617.2 [y]).

The Nike Site was purchased in 1997 by Yeshiva Chofetz Chaim of Radin (hereinafter the Yeshiva), the predecessor-in-interest to Mosdos Chofetz Chaim, Inc. (hereinafter Mosdos). Prior to the enactment of the ASHL, the Yeshiva applied for site plan approval to use the Nike Site as a religious school and community center, with dormitories consisting of 44 units in the 12 pre-existing residential buildings. On July 3, 2003, the County of Rockland Department of Planning (hereinafter the Rockland County Planning Department) disapproved the project, citing a letter dated July 3, 2003, from the Village of New Hempstead, which described the project as a "housing development" for persons of a particular faith, and citing concerns relating to traffic and community character.

Meanwhile, the Town had authorized the preparation of an

updated Comprehensive Plan, which had not been substantially revised since 1978, in order to address, inter alia, zoning in the unincorporated areas of the Town. The Town retained an independent consulting firm, which prepared a Draft Generic Environmental Impact Statement. After a public hearing, a proposal for adult student housing for married students and their families while the students continued their postsecondary education was added to the final version of the Comprehensive Plan adopted on January 29, 2004. The Comprehensive Plan noted that "a critical consideration" was the need to provide "a proper balance between the need for married student housing and the community's interest in minimizing impacts to neighboring areas."

Thereafter, in accordance with the new Comprehensive Plan, the Town considered a specific zoning amendment, later enacted as LL No. 9, to "permit adult student housing as a conditional use [by special permit] in all residential zones," as an accessory to an approved postsecondary educational institution on the same site. With respect to this proposal, an environmental assessment form (hereinafter the EAF) was prepared, which stated that the proposal "will not result in any large and important impact(s) and, therefore, is one which will not have a significant impact on the environment." The EAF identified the four potential sites for such development, which included the Nike Site, and stated that "[e]ach site identified will require a complete environmental review as part of the standard site plan approval process." With respect to the Nike Site, the EAF noted that it was adjacent to a "public school site with thick vegetative buffers to the south and west." Since the Nike Site was an "island site" located on the Town's border with the Villages of New Hempstead and Wesley Hills, the EAF concluded that it was "not possible to create a buffer from the Village boundaries." With respect to traffic, the EAF stated that "[s]ince the students by definition are full time, most of them will remain on site for the majority of the day," generating fewer vehicle trips than the general population.

The Rockland County Planning Department recommended modifications to this proposed amendment to the zoning law, which were, for the most part, adopted. On June 15, 2004, the Town Board, as lead agency, issued a negative declaration, which determined that enactment of the ASHL was a Type I action for the purposes of review under SEQRA, which presumptively does not require the preparation of an environmental impact statement (hereinafter EIS) (*see* 6 NYCRR 617.4) and, upon review of the EAF, concluded that "the proposed action will not

result in any significant adverse impacts on the environment." After adopting the negative declaration, the Town Board unanimously adopted LL No. 9.

Thereafter, a draft of the Town's comprehensive new zoning law was completed, as well as a Draft Supplemental Environmental Impact Statement referable to the comprehensive rezoning. After a public hearing on September 27, 2004, a Final Supplemental Environmental Impact Statement (hereinafter the FSEIS) was adopted by the Town Board in a resolution dated November 22, 2004, along with a SEQRA Findings Statement. Upon the adoption of the FSEIS and the SEQRA Findings Statement, the new comprehensive zoning law, which was known as LL No. 10, and which incorporated the provisions of LL No. 9, was unanimously adopted by the Town Board.

Meanwhile, prior to the adoption of LL No. 9 and LL No. 10, the Yeshiva had filed a revised site plan referable to the Nike Site, and an EAF with respect to the revised site plan. On April 15, 2004, the Rockland County Planning Department disapproved the site plan as "premature," noting that, although the Town had acknowledged the need for adult student housing in the new Comprehensive Plan, it had not addressed the issue with appropriate zoning regulations.

In support of the revised site plan, and in response to traffic concerns, the Yeshiva submitted a "Traffic Impact Study" prepared by an engineering consultant, which concluded that the project "will not result in a significant negative impact on the area roadways." The study noted that there was a problematic unsignalled intersection at Grandview Avenue and Union Road/ New Hempstead Road, which was currently operating at the highest level of delay, "level F," during the morning peak hour, and would continue to operate at level F during the morning peak hour whether or not the project was built. However, the additional traffic generated from the Nike Site project at this particular intersection was estimated at 16 vehicles during the morning peak hour and 16 vehicles during the evening peak hour, or 1.5% of the total, which was less than the expected normal growth of 2% per year. In November 2004, the Traffic Impact Study was updated with respect to the Grandview Avenue and Union Road/New Hempstead Road intersection, to note that overall traffic volume was similar to traffic volume documented in the original study, and that the project would not have a detrimental impact on the intersections that were evaluated.

On November 30, 2004, after a public hearing, the Town Planning Board adopted a negative declaration which characterized

the Nike Site plan as an "unlisted" action for purposes of review under SEQRA, that is, an action for which there is no presumption as to whether an EIS should or should not be prepared and circulated. The negative declaration cited the traffic impact studies, which indicated that "the proposed housing will not have a detrimental impact on Grandview Avenue or the other intersections evaluated," and stated that "[b]y its nature as a self contained educational facility, traffic is minimized." The negative declaration further noted that "[t]o facilitate circulation along Grandview Avenue, a barrier separated, off road, bus stop has been proposed to allow traffic to continue while buses load and unload." With respect to community character, the negative declaration stated that the site plan provided for six-to-eight-foot-long plantings along the front and rear lot lines, and layers of Norway spruces along the side yards, to isolate the site from its neighbors. On the frontage along Grandview Avenue, the site plan provided for a decorative metal fence between two stone pillars. The ASHL permitted the construction of 75 dwelling units pursuant to special permit, but the site plan was for only 60 units.

The instant hybrid proceeding and action challenging LL No. 9 was commenced in October 2004, and, upon repeal of that law, an amended petition was filed in December 2004, challenging the superseding law, LL No. 10. In support of the amended petition, the petitioners submitted an affidavit from a professional engineer, stating that, in his opinion, adult student housing would generate two to five times the traffic of single-family housing. He noted that there was no requirement in the ASHL that resident students take courses at the school on the Nike Site, and that, therefore, the adult students could take courses elsewhere, such as Rockland County Community College, which would require a vehicular commute to school.

In an order and judgment entered August 23, 2005, the Supreme Court dismissed the proceeding insofar as asserted on behalf of the Villages of Chestnut Ridge, the Village of Montebello, the Village of Pomona, the Village of Wesley Hills, Milton Shapiro, and Sonya Shapiro, on the ground that the villages lacked the capacity to sue, and the villages and the Shapiros lacked standing. However, the Supreme Court concluded that the two remaining petitioners had standing, and granted them a preliminary injunction during the pendency of the proceeding and action barring any approvals or issuances of building permits, and barring any construction at the Nike Site or any other site pursuant to LL No. 10. The preliminary injunction lapsed when those petitioners failed to post an undertaking.

The other petitioners appealed to this Court, and thereafter moved in this Court to enjoin all construction work pending appeal. That motion was denied by decision and order on motion of this Court dated August 22, 2006. While the appeal was pending, the 60 units were 99% completed.

On appeal, this Court modified the order and judgment, and reinstated the causes of action challenging LL No. 9, LL No. 10, and the Nike Site plan (*see Matter of Village of Chestnut Ridge v Town of Ramapo*, 45 AD3d 74 [2007]). Thereafter, the Supreme Court issued a memorandum decision dated December 8, 2009, addressing the merits of the petitioners' contentions. The Supreme Court reasoned that the Town's issuance of a negative declaration with respect to LL No. 9 was not arbitrary and capricious since, inter alia, the "existing traffic level was found to have minimal negative impact" with respect to the Nike Site and another affected site, and impacts to community character would be small to moderate, since density would be limited to 16 units per acre. The Supreme Court further concluded that the Town did not violate SEQRA in its environmental review prior to the adoption of the Comprehensive Plan and the ASHL, as incorporated in LL No. 10.

With respect to the site plan for the Nike Site, the Supreme Court concluded that, although the water and sewer studies were adequate, the Town Planning Board, as lead agency, "failed to adequately address relevant potential impacts from the site, in particular, the character of the community and the impact on traffic." The Supreme Court explained that it was remitting the matter to the Town Planning Board for preparation and circulation of an environmental impact statement. Further, the Supreme Court rejected Mosdos's claim that it had acquired vested rights in its building permit for the Nike Site, explaining that Mosdos was aware that the petitioners had moved for injunctive relief. On March 1, 2010, the Supreme Court entered judgment in accordance with the decision.

On appeal, Mosdos contends that, contrary to the determination of the Supreme Court, it acquired vested rights in its building permit, pursuant to which the construction at the Nike Site was substantially completed during this litigation. As a consequence, Mosdos contends that the petitioners' arguments with respect to the Nike Site plan have been rendered academic (*see Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.*, 2 NY3d 727, 730 [2004]; *Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach*, 98 NY2d 165, 174 [2002]). This contention is without merit. Although the preliminary injunction issued by

the Supreme Court lapsed owing to the failure of several of the petitioners to post the required undertaking, the remaining petitioners sought injunctive relief in this Court, which was denied. Thus, these petitioners put Mosdos on notice that construction was undertaken at its own risk (*see Matter of Schupak v Zoning Bd. of Appeals of Town of Marbletown*, 31 AD3d 1018, 1020 [2006]; *Matter of E & J Sylcox Realty, Inc. v Town of Newburgh Planning Bd.*, 12 AD3d 445, 446 [2004]).

Turning to the merits, the Town Planning Board, as lead agency, determined that the site plan application was an "[u]nlisted action" (6 NYCRR 617.2 [ak]). If an action is designated a Type I action, there is "the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS" (6 NYCRR 617.4 [a] [1]). However, an unlisted action does not involve that presumption (*see Matter of Terrace Manor Civic Assn. v Town of N. Hempstead*, 301 AD2d 534, 535 [2003]). An environmental impact statement is only required if the "proposed action included the potential for at least one significant adverse environmental impact" (*Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d 1450, 1453 [2011]). "[W]here the lead agency, after taking a 'hard look' at relevant environmental concerns, determines that the project will have no significant adverse environmental impacts, and issues a negative declaration to that effect, the EIS may be dispensed with as unnecessary, even for a Type I action" (*Matter of Incorporated Vil. of Poquott v Cahill*, 11 AD3d 536, 540 [2004]).

"Judicial review of a lead agency's negative declaration is limited to 'whether the agency identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination' " (*Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337, 348 [2003], quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]). The issue before the court is whether the negative declaration was affected by an error of law, arbitrary and capricious, or an abuse of discretion (*see Matter of Baker v Village of Elmsford*, 70 AD3d 181, 187 [2009]). Upon judicial review, "a court is not free to substitute its judgment for that of the agency on substantive matters" (*Akpan v Koch*, 75 NY2d 561, 571 [1990]).

In making its determination, the Town Planning Board was not required to accept the opinions of the petitioners' experts over those of its own consultants (*see Matter of Thorne v Village of Millbrook Planning Bd.*, 83 AD3d 723, 725-726 [2011]). Further, generalized community objections (*see Matter of Hells*

*Kitchen Neighborhood Assn. v City of New York*, 81 AD3d 460, 462 [2011]) or speculative environmental consequences (*see Matter of Chinese Staff & Workers' Assn. v Burden*, 88 AD3d 425, 433 [2011], *affd* 19 NY3d 922 [2012]) are insufficient to challenge the Town's environmental review. Although a negative declaration adopted "without reference to any empirical or experimental data, scientific authorities, or any explanatory information, and consist[ing] of conclusory statements" may be annulled (*Matter of Serdarevic v Town of Goshen*, 39 AD3d 552, 554 [2007]), and strict compliance with the procedural requirements of SEQRA is mandated (*see Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d at 347-348; *Matter of Riverso v Rockland County Solid Waste Mgt. Auth.*, 96 AD3d 764 [2012]), "[a]n agency's responsibility under SEQRA must be viewed in light of a 'rule of reason' " (*Matter of Neville v Koch*, 79 NY2d 416, 425 [1992]).

In setting aside the negative declaration with respect to the Nike Site plan, the Supreme Court identified two issues of environmental concern: traffic and community character. The Supreme Court's conclusion that the negative declaration with respect to the Nike Site plan was arbitrary and capricious is inconsistent with its conclusion that the negative declaration with respect to LL Law No. 9 was not arbitrary and capricious, based, inter alia, on findings with respect to the Nike Site and another affected site that the "existing traffic level was found to have minimal negative impact," and impacts to community character would be small to moderate, since density would be limited to 16 units per acre.

The Supreme Court cited the fact that the Rockland County Planning Department raised concerns with respect to those issues, which was a relevant consideration (*see Matter of Scenic Hudson v Town of Fishkill Town Bd.*, 258 AD2d 654, 656-657 [1999]). However, the Rockland County Planning Department disapproved the Nike Site plan in April 2004 as "premature," prior to the updated traffic study that was completed in November 2004. The original and updated traffic impact studies submitted to the Town Planning Board, and cited in its negative declaration, indicated that the project would not have a significant detrimental impact, and the projected increase in traffic at the problematic intersection of Grandview Avenue and Union Road/New Hempstead Road at peak hours would equate to an increase in traffic of less than 1.5%, representing less that the normal background traffic growth expected of 2% per year. In addition, the Nike Site plan contained a mitigating feature, consistent with the special permit requirements of the ASHL, for a

barrier-separated, off-road bus stop to facilitate circulation along Grandview Avenue while school buses are loading. The petitioners' expert's concern that the educational facility was not as self-contained as it purported to be, since the adult students could take courses elsewhere, such as Rockland County Community College, and that this might require a vehicular commute to school, was purely speculative (*see Matter of Chinese Staff & Workers' Assn. v Burden*, 88 AD3d at 433).

With respect to community character, we note that the educational facility on the Nike Site is next to a public school and storage facility. The Town's border with the Village of Wesley Hills, which was the only party with standing to challenge the site plan, is located across Grandview Avenue, which is a county road. Significantly, the site plan minimized any adverse impacts on community character by providing for substantial landscaping and aesthetic design (*see Matter of East Moriches Prop. Owners' Assn., Inc. v Planning Bd. of Town of Brookhaven*, 66 AD3d 895, 896 [2009]). Further, the restriction of residential use to adult, married full-time students, their spouses, their children, and faculty members insured that the Nike Site retained its character as an educational institution, and did not become a "housing development." Under the circumstances of this case, the Town Planning Board gave "due consideration to pertinent environmental factors" (*Akpan v Koch*, 75 NY2d at 571), and adopted a negative declaration based upon reasoned elaboration.

With respect to the challenge to the adult student housing provisions of the Town's zoning law, those provisions were enacted twice, once as LL No. 9, and then as part of LL No. 10, which repealed and superseded LL No. 9. The Town Board, as lead agency, concluded that the enactment of LL No. 9 was a Type I action. It adopted a negative declaration, upon concluding that the local law had no significant adverse impact on the environment, and, thus, declined to prepare an EIS.

An EIS may usually be dispensed with in connection with a Type I action (*see Matter of Incorporated Vil. of Poquott v Cahill*, 11 AD3d at 540). Further, since LL No. 9 was repealed and superseded by provisions of LL No. 10, the question of whether SEQRA procedures were followed in the enactment of LL No. 9 is not determinative of this controversy (*see Matter of Young v Board of Trustees of Vil. of Blasdell*, 89 NY2d 846, 849 [1996]; *Matter of Citizens to Save Minnewaska, Socy. for Preserv. & Restoration of Ulster County Envt. v Ulster County*, 85 AD2d 794 [1981]). LL No. 10 was enacted after a full environmental review, based upon several EISs, including the FSEIS, which

responded to the comments made at a public hearing, as well as written comments submitted to the Town Board. Moreover, the Supreme Court correctly concluded that there was no improper segmentation of environmental review (*see Matter of Settco, LLC v New York State Urban Dev. Corp.*, 305 AD2d 1026, 1027 [2003]; *Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow*, 292 AD2d 617, 620-621 [2002]).

Mosdos's contentions with respect to its counterclaims are beyond the scope of its limited notice of appeal, and the counterclaims remain pending and undecided. Therefore, those contentions are not properly before this Court (*see 111-38 Mgt. Corp. v Benitez*, 70 AD3d 911, 912 [2010]; *Siegel v Landy*, 34 AD3d 556, 557 [2006]; *Katz v Katz*, 68 AD2d 536, 542-543 [1979]).

The parties' remaining contentions are without merit, or need not be addressed in light of our determination. Angiolillo, J.P., Belen, Roman and Sgroi, JJ., concur.